EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Víctor Souffront Cordero, et al.<br><br>Recurridos<br><br>v.<br><br>Autoridad de Acueductos y Alcantarillados, et al.<br><br>Demandados<br><br>Ace Insurance Company<br><br>Peticionario | Certiorari<br><br>2005 TSPR 49<br><br>163 DPR \_\_\_\_ |

Número del Caso: CC-2004-563

Fecha: 21 de abril de 2005

Tribunal de Apelaciones:

Región Judicial de Mayagüez

Panel integrado por su Presidente, la Juez López Vilanova, los Jueces Córdova Arone y González Rivera

Abogado de la Parte Peticionaria:

Lcdo. Roberto Abesada-Agüet

Abogado de la Parte Recurrida:

Lcdo. Segismundo López Montalvo

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Víctor Souffront Cordero, *et al.*

    Recurridos

       v.

Autoridad de Acueductos y                CC-2004-563
Alcantarillados, *et al.*

    Demandados

Ace Insurance Company

    Peticionario

PER CURIAM

San Juan, Puerto Rico, a 21 de abril de 2005

En el presente caso, el peticionario nos solicita que revoquemos la determinación del Tribunal de Apelaciones toda vez que el recurso de apelación interpuesto por los recurridos se presentó fuera del término que proveen las Reglas de Procedimiento Civil lo que privó de jurisdicción al foro apelativo. Aduce el peticionario que el licenciado Segismundo López Montalvo, abogado de la parte aquí recurrida —apelantes ante el Tribunal de Apelaciones—, utilizó un sobre equivocado e incorrecto para acreditar la jurisdicción ante el Tribunal de Apelaciones. La seriedad del planteamiento, amerita nuestra intervención.

**I**

El 28 de octubre de 2001, en o alrededor de las 7:30 de la noche, el señor Víctor M. Souffront Cordero, caminaba por la Calle Pablo Casals del Municipio de Mayagüez cuando sufrió una caída al poner un pie sobre un contador de agua cuya tapa cedió al pisarla. A raíz de esa caída, el señor Souffront sufrió traumas y contusiones en la parte baja de la espalda y en su cuerpo.[1] El 26 de octubre de 2002, el señor Souffront, su esposa Maritza López Montalvo, la sociedad de gananciales y de sus hijos menores de edad, presentaron una demanda en daños y perjuicios contra el Estado Libre Asociado de Puerto Rico, la Autoridad de Acueductos y Alcantarillados ("AAA"), su compañía aseguradora American International Insurance Company ("AIICO"), el Municipio de Mayagüez y su aseguradora Ace Insurance Co. ("ACE"), así como otros demandados de nombres desconocidos.

AAA y AIICO contestaron la demanda enmendada el 30 de mayo de 2002; ACE hizo lo propio el 14 de junio de 2002. Ambas negaron las alegaciones sobre negligencia y daños. El 3 de octubre de 2002, el Tribunal de Primera Instancia dictó sentencia sumaria desestimando la demanda contra el Estado Libre Asociado, al concluir que el Departamento de Obras Públicas no tenía jurisdicción sobre las aceras o calles de Mayagüez.[2] El 26 de febrero de 2003, el tribunal

---

[1] Apéndice del recurso de certiorari, págs. 23-24.
[2] Apéndice del recurso de certiorari, págs. 160-161.

de instancia dictó sentencia parcial desestimando la demanda contra el Municipio de Mayagüez por no habérsele emplazado dentro del término de seis (6) meses dispuesto en la Regla 4.3(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 4.3(b).[3]

Posteriormente, los demandantes desistieron con perjuicio de sus reclamaciones contra la AAA y AIICO al llegar a un acuerdo transaccional con éstos para finiquitar el pleito por la suma de $15,000.00.[4] Una vez concluido el descubrimiento de prueba, ACE presentó una moción de sentencia sumaria por insuficiencia de la prueba.[5] Alegó que los demandantes no presentaron prueba sobre el elemento de previsibilidad para establecer la negligencia en el caso. Los demandantes se opusieron oportunamente.[6] El tribunal de instancia declaró con lugar la moción de sentencia sumaria presentada por ACE y desestimó el pleito.

La sentencia dictada fue archivada en autos y notificada a las partes el **8 de diciembre de 2003**.[7] El 8 de enero de 2004, **31 días después de archivada en autos y notificada la sentencia**, los demandantes presentaron ante el Tribunal de Apelaciones un recurso de apelación. Indicaron en su escrito, sin embargo, que la sentencia

---

[3] *Id*, págs. 163-164.

[4] *Id*, pág. 121.

[5] *Id*, págs. 37-45.

[6] *Id*, págs. 46-50.

[7] *Id*, pág. 116.

apelada se les había notificado el 9 de diciembre y no en la fecha del archivo en autos. Para acreditar la jurisdicción del foro apelativo, se incluyó en el apéndice del recurso copia de un sobre -con matasellos del 9 de diciembre de 2003 y un sello de $0.49 para el franqueo-, que se adujo fue el que se utilizó para notificar la sentencia.[8]

Así las cosas, el 25 de febrero de 2004, ACE presentó una moción de desestimación por falta de jurisdicción ante el foro apelativo. En síntesis, argumentó que el sobre con matasellos de fecha 9 de diciembre de 2003, no correspondía al sobre en que se debió haber enviado la sentencia apelada. ACE presentó copia del sobre que se recibió en su oficina con la sentencia apelada así como copia del sobre en que la Autoridad de Acueductos y Alcantarillados y su compañía de seguros AIICO recibieron la sentencia.[9] Ambos sobres reflejaban que la fecha de envío por correos era el 8 de diciembre de 2003. Además, ambos tenían dos sellos para costear el franqueo que totalizaban $1.06; un sello de $0.49 y otro de $0.57. Llaman además la atención al hecho que existía secuencia numérica en los sellos adheridos a los sobres recibidos por los abogados de los co-demandados, indicativo, argumentan de que se habían enviado simultáneamente.

---

[8] *Id,* pág. 117.

[9] *Id,* pág. 157-58.

El peticionario señaló que el sobre que anejó el licenciado López Montalvo al recurso de apelación para acreditar la jurisdicción apelativa solamente tenía adherido un sello de $0.49, cantidad que entiende insuficiente para costear el franqueo de un documento de catorce páginas, como la sentencia apelada. Más importante aún, ACE señaló en su escrito que hizo una búsqueda en "teletribunales" que reflejó que la sentencia apelada fue notificada el 8 de diciembre. Se incluyó copia de la página de "teletribunales" que así lo reflejaba.[10] Los apelantes no replicaron a dicha moción.

Mediante sentencia del 25 de marzo de 2004, el foro apelativo revocó la sentencia de instancia. El tribunal sin embargo, guardó silencio sobre el planteamiento de falta de jurisdicción. ACE solicitó la reconsideración de la sentencia bajo el fundamento de falta de jurisdicción del foro apelativo. El tribunal acogió la moción de reconsideración presentada y le concedió diez (10) días a los recurridos para expresarse. Los recurridos eventualmente comparecieron y arguyeron que ellos fueron notificados con la sentencia el 9 de diciembre y no el 8 de diciembre, como las otras partes en el pleito. Indicaron además que los recurridos "pretenden [que] los apelantes . . . asumamos la responsabilidad de responder sobre una situación sobre la cual no tenemos control y

---

[10] *Id*, pág. 165. Al día siguiente ACE presentó su alegato en oposición al recurso de apelación.

expliquemos lo desconocido e inexplicable."[11]  Concluyeron que correspondía a los éstos presentar como evidencia una certificación de la Secretaría del tribunal de origen acreditando la fecha de archivo en autos y envío por correo, según lo estableció el caso de *Martínez v. Abijoe Realty*, 151 D.P.R. 1 (2000), lo que no había ocurrido, por lo que no procedía el planteamiento.  Por su parte, ACE replicó e indicó que en efecto había acudido a la Secretaría del Tribunal de Mayagüez, pero se les indicó que allí no expedían certificaciones sobre las notificaciones.

Así las cosas, el Tribunal de Apelaciones dictó una Resolución rechazando los planteamientos de ACE e indicando que éstos eran meras "conclusiones, sospechas o conjeturas" insuficientes para que el tribunal se declarara sin jurisdicción.  Inconforme, ACE acudió ante nosotros el pasado 23 de junio de 2004.  En su escrito señaló los siguientes errores:

> 1. El Tribunal de Apelaciones incidió al no desestimar el recurso de apelación presentado por los Souffront por falta de jurisdicción.

> 2. El Tribunal de Apelaciones incidió al revocar la sentencia sumaria emitida por el Tribunal de Primera Instancia y determinar que existían controversias de hechos sobre la posición de la tapa del contador de agua que alegadamente le ocasionó la caída a Víctor Souffront Cordero.

El peticionario incluyó en el apéndice a su petición de certiorari una certificación oficial de la Secretaria Regional del Tribunal de Primera Instancia, Sala Superior

---

[11] *Id*, pág. 240.

de Mayagüez en la cual, en efecto, se certifica que la sentencia dictada en instancia fue "notificada y depositada en el correo el 8 de diciembre de 2003"; y que, un cotejo del registro de "`Notificación de Sentencias y Resoluciones Enviadas al Correo Fuera de Fecha' no refleja anotación alguna que indique notificación fuera de la fecha de archivo en autos."

Evaluado el recurso, el pasado 20 de septiembre de 2004 emitimos una Resolución dirigida a la parte recurrida para que mostrara causa por la cual no debíamos expedir el auto solicitado y revocar la determinación del Tribunal de Apelaciones por falta de jurisdicción. Luego de solicitar una prórroga para comparecer, la parte recurrida finalmente presentó su escrito ante este Tribunal el 25 de enero de 2005. En su escrito, señaló que este Tribunal no debía considerar la certificación emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, por cuanto ese documento no fue presentado ante el Tribunal de Apelaciones por lo que no formó parte del expediente del caso. Indicó que en vista de ello no podemos considerar el mismo.

Nos indicó además que la "alegada certificación . . . no establece la inexistencia de error humano alguno, no exime de responsabilidad en el manejo a la Secretaría . . ., se limita a establecer que no aparece el correspondiente registro." Nos solicitó además que tomemos conocimiento judicial "de las correspondencias mal

manejadas, colocadas en lugares equivocados y extraviadas que ocurren diariamente en el correo postal."

Contando pues con la comparecencia de las partes resolvemos conforme intimamos.

II

A.

La Regla 53.1 (c) de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 53.1 (c), dispone el término jurisdiccional de treinta (30) días para presentar un recurso de apelación ante el Tribunal de Apelaciones, "contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado." Asimismo, el Reglamento Transitorio del Tribunal de Apelaciones, Regla 13(A), 4 L.P.R.A. Ap.III, vigente al momento de la notificación del recurso del caso ante nosotros, disponía también que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del **término jurisdiccional de treinta (30) días** contados desde el archivo en autos de una copia de la notificación de la sentencia. [12] (Énfasis nuestro)

Este término comienza a transcurrir con la notificación correspondiente del archivo en autos de copia de la sentencia a todas las partes en el pleito. De existir una discrepancia entre la fecha de archivo en autos y la fecha del depósito en el correo de la notificación, esta última será el punto de partida para calcular cuándo

---

[12] El 20 de junio de 2004 se aprobó el Reglamento del Tribunal de Apelaciones mediante Resolución Número ER-2004-10. La Regla 13(A) permaneció inalterada.

comienza a correr el término correspondiente para acudir en alzada, conforme claramente dispone la Regla 46 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 46, según enmendada por la Ley Núm. 40 de 10 de enero de 1999, para esos propósitos. La Regla por lo tanto lee como sigue:

> Será deber del secretario notificar a la brevedad posible dentro de las normas que fije el Tribunal Supremo, las sentencias que dicte el tribunal, archivando en autos copia de la sentencia y de la constancia de la notificación y registrando la sentencia. La anotación de una sentencia en el Registro de Pleitos y Procedimientos constituye el registro de la sentencia. **La sentencia no surtirá efecto hasta archivarse en autos copia de la notificación y el término para apelar empezará a correr a partir de la fecha de dicho archivo. Si la fecha de archivo en autos de copia de la notificación de la sentencia, resolución u orden es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo.** (Énfasis nuestro.)

En *Martínez v. Abijoe Realty,* ante, indicamos que cuando la notificación postal no coincidiera con la fecha del archivo en autos del dictamen judicial, la mejor práctica a seguir por un apelante o peticionario para acreditar la jurisdicción del foro apelativo era incluir en el apéndice al recurso, no sólo la copia del volante del archivo en autos de la notificación de la sentencia, sino también copia del sobre recibido del tribunal cuyo matasellos de correo reflejara claramente la discrepancia de fechas. De esa forma, el tribunal y las partes podrían constatar si el recurso de apelación se presentó dentro del tiempo que proveen las Reglas de Procedimiento Civil.

Reconocimos en *Martínez*, que podrían surgir ocasiones en que la parte opositora a aquella que reclama la puesta en el correo como punto de partida para acudir en alzada, no estuviera conteste con lo alegado. Cuando ello ocurriera, indicamos, "la parte opositora podrá en **forma fehaciente traerlo a la consideración del tribunal y a luz de la totalidad de las circunstancias, incluida una certificación de la secretaría del tribunal de origen, en cuanto al trámite específico de la correspondencia y notificación del día particular**." 151 D.P.R. a la pág. 13. (Énfasis nuestro.)

En *Martínez* además, expresamos nuestra preocupación sobre "el peligro potencial que podría representar la mala utilización de otro sobre originado en el mismo tribunal, en un caso distinto, con fecha propicia para manipular, por vía de la fecha del franqueo, la notificación real del archivo en autos y su depósito en el correo." 151 D.P.R. pág. 11. Como medida cautelar ante posibles actuaciones fraudulentas, ordenamos a las secretarías de los diversos centros judiciales a que crearan un registro, o levantaran un acta, que permitiera dejar constancia de las ocasiones en que una sentencia, resolución u orden se notificara por correo en una fecha distinta al archivo en autos de la misma. 151 D.P.R. pág. 12. De esta forma proveíamos de un mecanismo mediante el cual cualquier alegación de falta de simultaneidad entre el archivo en autos y el envío por

correo podría corroborarse de forma fehaciente en los expedientes oficiales del tribunal correspondiente.

Conscientes del potencial problema que podría significar la utilización de la fecha del matasellos para acreditar la jurisdicción, advertimos a los abogados sobre las consecuencias de utilizar sobres que provienen de un mismo tribunal para inducir a error al foro apelativo. Indicamos que cualquier alteración o uso indebido de un sobre, estaría sujeto no sólo a sanciones económicas, sino disciplinarias contra el abogado. *Martínez*, 151 D.P.R. pág. 13, n. 5. Es evidente que tal proceder es demostrativo de falta de honestidad, veracidad y respeto a los tribunales como a las partes en un litigio. Una conducta de esta naturaleza, está claramente reñida con el mandato de Regla 9 de las de Procedimiento Civil, sobre la importancia de la firma de un abogado en los documentos que presenta en un tribunal, 32 L.P.R.A. Ap. III, R. 9; y además los Cánones 9 y 12 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 9, 12.[13]

---

[13] El Canon 9 de Ética Profesional dispone en lo pertinente*:*

> El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto.

Por su parte, el Canon 12 dispone en lo pertinente:

> **Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas.** Ello implica el desplegar todas las diligencias necesarias para

B.

Un término de naturaleza jurisdiccional como el de apelación, es de carácter fatal; como tal, el incumplimiento con el mismo priva al foro apelativo de jurisdicción para atender el recurso instado. De ahí, la importancia de determinar con certeza cuándo comienza el término para acudir en alzada.

Es norma reiterada de este Tribunal que la falta de jurisdicción sobre la materia no es susceptible de ser subsanada. *Vázquez v. A.R.P.E.*, 128 D.P.R. 513, 537 (1991); *López Rivera v. Autoridad de Fuentes Fluviales*, 89 D.P.R. 414, 419 (1963). Le corresponde a los tribunales ser celosos guardianes de su jurisdicción. Es deber ministerial de todo tribunal, cuestionada su jurisdicción, examinar y evaluar rigurosamente el señalamiento pues éste incide directamente sobre el poder mismo para adjudicar una controversia. Es por ello que la falta de jurisdicción de un tribunal es un asunto que se puede levantar y resolver *motu proprio;* pues ciertamente, no se tiene discreción para asumir jurisdicción allí donde no la hay. Véase, *Carattini v. Collazo Systems*, res. 3 de enero de 2003, 158 D.P.R. ___, 2003 T.S.P.R. 1, 2003 J.T.S. 4; *Padró v. Vidal*, res. 14 de febrero de 2001, 153 D.P.R. _____, 2001 T.S.P.R. 15; 2001 J.T.S. 18; *Martínez v. Junta de Planificación* 109 D.P.R. 839 (1980). Hecho ese análisis y concluido que se

_____

asegurar que no se causen indebidas dilaciones en su tramitación y solución. (Énfasis nuestro.)

carece de jurisdicción procede la desestimación del caso. Véase además, Regla 83 (B)(1) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Apéndice XXII-A R.83, Regla 32 (B) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, R.32.

Establecido el marco doctrinal apliquemos el mismo a los hechos del caso. Veamos.

**IV.**

Este caso ejemplifica cuán acertada fue nuestra preocupación del potencial problema que representaba la utilización de la fecha del matasello de correos en un sobre para acreditar la jurisdicción de un foro apelativo. Además, valida el mecanismo profiláctico adoptado para acreditar las instancias en que la fecha del archivo en autos y del envío por correo de la notificación de una sentencia, resolución u orden, fueran discímiles.

Aquí, ACE oportunamente presentó una moción de desestimación ante el foro apelativo. En la moción presentada se levantaron serias interrogantes sobre la jurisdicción del Tribunal de Apelaciones. La documentación incluida en la moción presentada no reflejaba meras "conjeturas o sospechas", sino todo lo contrario. Levantaba bandera de alerta sobre la grave posibilidad de que se hubiera manipulado el trámite procesal del caso para manufacturar una jurisdicción allí donde no la había.

Se incluyó copia de los sobres recibidos por los abogados de los codemandados en el caso de epígrafe que

reflejaban que ambos fueron enviados el mismo día -8 de diciembre de 2003- y que el franqueo totalizaba $1.06. La sentencia notificada era extensa pues constaba de catorce páginas. Por otro lado, el sobre que se anejó al recurso de apelación presentado por la representación legal de los demandantes, para acreditar la jurisdicción ante foro apelativo intermedio, contenía solamente un sello de $0.49. Una cantidad significativamente menor que la utilizada para remitir por correos la misma sentencia, a las otras dos partes en el caso. No es irrazonable concluir, como solicitó el peticionario, que el monto de cuarenta y nueve centavos resultaba insuficiente para costear el franqueo de un documento de catorce páginas de tipo legal.

Más grave aun, la información levantada de la página de Internet de "teletribunales", indicaba que la fecha de la notificación había sido en efecto el 8 de diciembre de 2003. Toda esta información debió ser suficiente para que el tribunal apelativo **exigiera que se procurara de la Secretaría del Tribunal de Primera Instancia, Sala Superior de Mayagüez, una certificación de la fecha de archivo en autos y envío por correo de la sentencia objeto de su revisión. Así como también que se cotejara el registro de notificación de sentencias y resoluciones enviadas por correo en fecha distinta al archivo de autos de una sentencia, para tener certeza respecto cuándo se notificó la sentencia apelada.** De esta forma se despejaba cualquier duda sobre su poder para atender en la apelación instada.

Si bien es cierto que en *Martínez v. Abijoe*, indicamos que los abogados debían incluir una certificación de la secretaría del tribunal en situaciones como la de autos, el incumplimiento con ese requisito, de suyo, es insuficiente para descartar un planteamiento de falta de jurisdicción. Muy en particular cuando, como en el caso de autos, evaluada la totalidad de las circunstancias, la información remitida al foro apelativo a favor del argumento de falta de jurisdicción levantaba interrogantes sobre el trámite de la apelación interpuesta, que tenían que ser atendidas. Notamos también que el recurrido no rebatió el planteamiento de los peticionarios, más sólo optó, principalmente, por indicar que eso era "algo inexplicable."

En este caso no nos cabe duda, que ACE presentó argumentos válidos y específicos ante el Tribunal de Apelaciones sustentados por documentos que, como poco, apuntaban a irregularidades en el trámite apelativo seguido en este caso. Ello a su vez requería de una acción más afirmativa del foro apelativo para cerciorarse de su jurisdicción, utilizando el camino trazado en *Martínez v. Abijoe*. Recordemos que los tribunales tenemos la obligación de velar por nuestra propia jurisdicción.

En su escrito ante este Tribunal, el peticionario incluyó copia de la certificación oficial del tribunal de instancia que, de forma fehaciente, corrobora que la sentencia dictada en el caso de epígrafe se archivó en

autos y se notificó por correos, el 8 de diciembre de 2003. El licenciado López Montalvo nos solicita que hagamos caso omiso de la misma toda vez que no formó parte del expediente del Tribunal de Apelaciones.  No tiene razón.

Primero, la falta de jurisdicción es una defensa que no se renuncia y se puede levantar en apelación por una parte aun cuando el argumento no se hubiera hecho antes. Es además como señalamos, un asunto que el tribunal a su vez puede levantar y resolver *motu proprio*.  Segundo, se trata de un documento oficial emitido por la Rama Judicial, específicamente, la Secretaría del Tribunal de Primera Instancia, Sala Superior de Mayagüez, que evidencia de forma fehaciente la contención del peticionario de que el Tribunal de Apelaciones no tenía jurisdicción para atender en la apelación presentada.  Hacer caso omiso de este documento, que pone de manifiesto un trámite amañado para confeccionar artificialmente la jurisdicción del  foro apelativo, sería faltarle a nuestra responsabilidad de velar por que los trámites ante los tribunales del país se lleven a cabo con entera pulcritud y transparencia.  La sugerencia del licenciado López Montalvo lacera nuestro sentido de lo justo; es, a todas luces una pretensión insostenible.

La conducta desplegada por el licenciado López Montalvo en el trámite apelativo seguido en este caso es altamente preocupante.  Habida cuenta de las irregularidades en el proceso seguido en este caso ante el

Tribunal de Apelaciones, se refiere el asunto al Procurador General para que radique la correspondiente querella.

A la luz de lo anterior, se expide el auto solicitado y se dicta sentencia revocatoria de la del Tribunal de Apelaciones, por carecer dicho foro de jurisdicción para intervenir en el recurso apelativo interpuesto ante sí. Se refiere la conducta del licenciado Segismundo López Montalvo a la atención del Procurador General para la radicación de la correspondiente querella.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Víctor Souffront Cordero, *et al.*

    Recurridos

        v.

Autoridad de Acueductos y
Alcantarillados, *et al.*               CC-2004-563

    Demandados

Ace Insurance Company

    Peticionario


SENTENCIA


San Juan Puerto Rico, a 21 de abril de 2005

Por los fundamentos expuestos en la Opinión de Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto solicitado y se dicta sentencia revocatoria de la del Tribunal de Apelaciones, por carecer dicho foro de jurisdicción para intervenir en el recurso apelativo interpuesto ante sí.

Habida cuenta de las irregularidades en el proceso seguido en este caso y conforme a nuestros pronunciamientos en **_Martínez v. Abijoe Realty_**, 151 D.P.R. 1 (2000), se refiere su conducta a la atención del Procurador General para la radicación de la correspondiente querella.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no intervino.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo